J. McCrone, for appellant.        J. Fennel, for respondent.

PER CURIAM. We know of no authority conferred upon this court, by
which it can appropriate, upon petition or motion, any part of the estate of
an infant to the payment of claims against the infant. There is no way
pointed out by which the court, in such a proceeding, can acquire jurisdiction
of the infant. No such power is conferred by statute, nor is it a part of the
general equity jurisdiction of the court. In the case of infants the statute is
explicit as to the method in which the court is to acquire jurisdiction, and
this is always by the service of process upon the infant, and the appointment
of a guardian. It would therefore appear that the only way in which the ap-
pellant can recover his claim against the infant, if it is well founded, is, as
was suggested by the court below, by an action. It may be true that, even
after judgment, application at the foot of the judgment may be necessary in
order that the same should be collected out of the estate of the infant; but
the court, having acquired jurisdiction in the action of the infant, and having
rendered judgment against it, has the power to enforce its process. We there-
fore concur in the views expressed by the learned court below in the opinion
rendered upon the reargument, and think that the order appealed from should
be affirmed, with costs.

---

### REHFELDT v. CITY OF BROOKLYN.

*(City Court of Brooklyn, General Term. April 25, 1892.)*

MUNICIPAL CORPORATIONS—IMPROVEMENTS OF STREETS—REPEAL OF LOCAL STATUTE.

Laws 1852, c. 293, providing for the improvement of certain streets in Brooklyn,
was not repealed by Laws 1854, and acts amendatory thereof, adopting a general
plan for improving streets in that city, the two plans being not inconsistent with
each other; and an award made to a property owner under the special act may be
enforced.

Appeal from special term.

Action by Catherine A. G. Rehfeldt against the city of Brooklyn. From
a judgment for plaintiff, defendant appeals. Affirmed.

Argued before CLEMENT, C. J., and VAN WYCK, J.

A. F. Jenks, for appellant.        C. J. Patterson, for respondent.

VAN WYCK, J. Judgment was recovered by plaintiff at special term for
$1,500 and interest, the amount of an award made to her in proceedings
taken by the city for the widening of Henry street, and from this judgment
the defendant appeals. The proceedings resulting in this award were taken
under Laws 1852, c. 293. Section 4 authorized the common council, on the
petition of any owner of land on Henry street between Atlantic and Degraw
streets, to open and widen Henry street between such streets 10 feet on the
easterly side thereof, and to prescribe and limit the district beyond which the
assessment shall not extend, and to apply to the county court for the appoint-
ment of three commissioners to apportion and assess upon the lands to be
benefited the costs and expenses incident to such opening and widening.
In 1871 such land owner petitioned the common council to so open and widen
this portion of Henry street. On June 5, 1871, the common council. in ex-
pressed pursuance of sections 4, 5, and 6 of the Laws of 1852, c. 293, pre-
scribed and fixed the assessment district "along the line of the proposed
opening, in width 100 feet on the easterly side thereof," beyond which it
shall not extend, and directed the corporation counsel to apply to the county
court for the appointment of three commissioners to apportion and assess
upon the lands to be benefited the costs and expenses incident to such open-

ing and widening. The city, through the corporation counsel, made such application to the county court, asking that three commissioners be appointed in pursuance of Laws 1852, c. 293, "to estimate the expense of the improvement, and the damages to be sustained therefrom by the owners of such lands." The court, on June 26, 1871, made such order, appointing three commissioners, reciting that it was done in pursuance of Laws 1852, c. 293. Section 4 of this act provides that the proceedings subsequent to the appointment of such commissioners shall be governed by the provisions of Laws 1850, c. 144, tit. 4. The commissioners made their report, addressed to the common council, and filed it with the county clerk, as required by section 12, tit. 4, Laws 1850, c. 144. The commissioners in their report awarded the plaintiff for her premises required for such opening and widening $1,500. They made no assessment upon the part of her premises not required for the widening, for the expenses and costs of the opening. There may have been good reasons for the same. We would suggest that the remaining portion of her lot was not benefited in their opinion, and, such being the case, no assessment could be made; for section 4, c. 293, Laws 1852, limits the assessment to such lands in the district fixed by the common council as will "be benefited" by the widening. This would apply to the lands of the whole assessment district; for, strange to say, the district was actually confined to the remainder of 100-feet deep lots fronting on the east side of the street, and from which 10 feet were taken, reducing the lots to 90 feet in depth. Then, again, there were substantially no expenses incident to the opening and widening of the street, except the awards of damages to those whose property was taken; for by section 6, c. 293, Laws 1852, the 10-feet strip taken off the front of each lot continued, by this provision, to be used as the courtyards of such owners, if not then already built upon, and, if then built on, to be occupied by such buildings. So the result of this opening and widening was to take the fee of the 10 feet from the former owners, and prohibit any encroachments thereupon thereafter by erection of buildings. The total sum of awards for damages of land taken was substantially the total cost of the improvement, and no assessments could be made if the commissioners were of the opinion that a lot fronting on the street was not benefited by reducing its depth 10 feet. The report of the commissioners was by the supreme court, October 17, 1874, duly confirmed, and directed to be delivered to the common council on the motion of the corporation counsel, and after hearing those objecting thereto, in pursuance of Laws 1850, c. 144, tit. 4, §§ 12-15, both inclusive. This gave the city absolute authority to make the improvement, and, as has already been shown, the improvement was then made by taking the title of the 10-feet strip from the owners, and prohibiting the erection of any building thereon after that. Section 16 of the same act provides that the city comptroller shall pay the awards without deduction therefrom by way of fee or commission. This, in our opinion, deprived the plaintiff of her property, and adjudicated that she was entitled to $1,500 from the city for compensation therefor. *Sage* v. *City of Brooklyn*, 89 N. Y. 189. The proceeding resulting in the award sued for was taken in pursuance of Laws 1852, c. 293, a special act providing for opening and widening Henry and two or three other streets specified therein, and the provisions of Laws 1850, c. 144, tit. 4, which are incorporated in the act of 1852 by reference thereto.

The city's defense to this action is based upon the contention that the provisions of the act of 1852 are superseded and repealed by the adoption of a general plan for opening and widening streets generally, and imposing assessments and making awards incident thereto found in Brooklyn Charter, (Laws 1854, c. 384, tit. 4, as amended by Laws 1862, c. 63, § 17;) that, instead of sending the report of commissioners to the common council, after its confirmation by the supreme court, according to the requirements of the

acts of 1852 and 1850, it should have been sent to the board of assessors, to be acted upon as required by section 17, c. 63, Laws 1862, viz., to apportion the assessments and strike a balance between each assessment and award on each piece of land. We do not think the act of 1852, which is a local and special act for the improvement of Henry and two or three other streets, specified by name therein, and containing a complete scheme of making assessments and awards for damages, was superseded or repealed by the general plan for improvements of streets generally, contained in the Laws of 1854 and 1862. The plans are not inconsistent; both can stand together, the latter applying to the streets generally, and the former to the streets specially named in the act. Both are valid, and the general plan of 1854, at best, is only cumulative to the special plan of 1852. This view seems to be sustained by the saving clause of Laws 1854, c. 384, tit. 11, § 14, which declares the same to be a public act, and that all acts and parts of acts not inconsistent with the provisions thereof shall remain in full force and effect. This construction is further supported in *Re Central Park*, 50 N. Y. 493; *Knapp* v. *City of Brooklyn*, 97 N. Y. 520; *Van Denburgh* v. *Greenbush*, 66 N. Y. 1; *People* v. *Quigg*, 59 N. Y. 83; *Whipple* v. *Christian*, 80 N. Y. 523; and *McKenna* v. *Edmundstone*, 91 N. Y. 231.

It appears rather late for the city to now object to the adjudication of plaintiff's right to this award by judgment of the supreme court confirming the report of the commissioners rendered on the motion and at the request of the city. The city instituted the proceedings under the act of 1852, and boldly pursued its provisions to the very end, reciting the fact in every step taken, and hesitates only when the owner, deprived of his property rights, asks the city to pay over, under Laws 1850, c. 144, tit. 4, § 16, the compensation awarded at its instance for the property taken without the consent of the owner, under the right of eminent domain.

The judgment must be affirmed, with costs.